# EXHIBIT 2

## ESCROW AGREEMENT

This **ESCROW AGREEMENT** (the "Escrow Agreement"), dated this 9th day of November, 1999, among THE INTERPUBLIC GROUP OF COMPANIES, INC., a Delaware corporation ("Interpublic"), PFRMF INVESTMENT HOLDINGS, LLC, a Connecticut corporation ("Holdings"), SALVATORE V. COLUCCI ("Colucci"), THOMAS KOTTLER ("Kottler") (Holdings, Colucci and Kottler are each sometimes referred to as a "Stockholder" and collectively as the "Stockholders") and WILMINGTON TRUST COMPANY (the "Escrow Agent"). Unless otherwise defined herein, capitalized terms contained herein shall have the meanings set forth in the Agreement and Plan of Reorganization (as defined below).

## W I T N E S S E T H:

**WHEREAS**, Interpublic, IPR Acquisition Corp., a Connecticut corporation ("Interpublic Sub"), International Pharmaceutical Research, Inc., a Connecticut corporation (the "Company"), and the Stockholders have entered into an Agreement and Plan of Reorganization dated as of October 20, 1999 (the "Agreement and Plan of Reorganization") providing for, among other things, the merger of Interpublic Sub with and into the Company, with the Company being the surviving corporation;

**WHEREAS**, pursuant to the Agreement and Plan of Reorganization, shares of Interpublic Stock having a Market Value of Seven Million Six Hundred Thousand Dollars ($7,600,000) are to be issued as partial or complete consideration (depending on the Share Value on the Release Date) for the final $9,500,000 of the Maximum Merger Price payable to the Stockholders as set forth in Section 3.03(e) of the Agreement and Plan of Reorganization (the "Escrow Shares") and on the date hereof stock certificates representing the Escrow Shares will be issued in the name of the Stockholders and delivered to the Escrow Agent;

**WHEREAS**, the Agreement and Plan of Reorganization provides for the execution and delivery of this Escrow Agreement pursuant to which the stock certificates representing the Escrow Shares and all stock dividends, if any, payable with respect to the Escrow Shares shall be placed in escrow with the Escrow Agent for the benefit of the Stockholders;

**WHEREAS**, the parties to this Escrow Agreement desire that Escrow Agent shall hold, and Escrow Agent has agreed to hold, the stock certificates representing (i) the Escrow Shares delivered to and deposited with Escrow Agent hereunder in escrow on the date hereof and (ii) any shares issued in the name of the Stockholders as dividends payable on the Escrow Shares delivered to and deposited with the Escrow Agent hereunder in escrow from time to time, on the terms and conditions provided in this Escrow Agreement;

148628

NOW, THEREFORE, the parties hereto mutually agree as follows:

1. <u>Appointment of Escrow Agent; Deposit</u>.

(a) <u>Appointment of Escrow Agent</u>. Interpublic and the Stockholders hereby designate and appoint Wilmington Trust Company as Escrow Agent under this Escrow Agreement.

(b) <u>Delivery of Escrow</u>. In accordance with the terms and conditions of the Agreement and Plan of Reorganization, Interpublic shall (i) deliver to and deposit with the Escrow Agent stock certificates representing the Escrow Shares (the "Escrow Share Certificates") on the date hereof, and (ii) deliver to and deposit with the Escrow Agent stock certificates (the "Escrow Dividend Certificates") representing shares issued in the name of the Stockholders as stock dividends payable on the Escrow Shares, if any, on each date such shares are so issued. Within two (2) days of the Escrow Agent's receipt of each of the Escrow Share Certificates and the Escrow Dividend Certificates (collectively, the "Escrow Certificates"), the Escrow Agent shall provide Interpublic and the Stockholders with proof of receipt thereof. The Escrow Certificates shall be held in escrow in accordance with this Escrow Agreement.

(c) <u>Deposit</u>. The Escrow Agent agrees (i) to act as Escrow Agent, and (ii) to hold and release the Escrow Certificates in accordance with the terms and conditions of this Escrow Agreement. Notwithstanding the foregoing, the Stockholders shall have all voting rights with respect to the Escrow Certificates.

2. <u>Release of Escrow Certificates</u>. Upon receipt by the Escrow Agent of a joint written notice or notices signed by each of the parties to this Escrow Agreement (other than the Escrow Agent) instructing the Escrow Agent to release the Escrow Certificates, the Escrow Agent shall deliver the Escrow Certificates as instructed in such joint written notices. Any excess Escrow Certificates not needed to satisfy the Merger Price shall at the termination of this Escrow Agreement be returned to Interpublic. Upon such deliveries of the Escrow Certificates, this Escrow Agreement shall be deemed terminated and the Escrow Agent shall be released and discharged from any further obligation hereunder.

3. <u>Termination</u>. This Escrow Agreement shall be terminated (i) upon the delivery of the Escrow Certificates as set forth in Section 2 hereof or (ii) by written mutual consent signed by all parties hereto.

4. <u>Escrow Agent's Duties; Administrative</u>. The parties to this Escrow Agreement agree that the Escrow Agent's duties hereunder shall be entirely administrative and that the Escrow Agent shall have no obligation to enforce performance by any of the parties of any such parties' obligations hereunder or under the Agreement and Plan of Reorganization or to resolve any disputes among such parties.

5. <u>Liability of Escrow Agent</u>. Escrow Agent shall not incur any liability to any party for damages, losses or expenses for (a) any act or failure to act made or omitted in good faith and

without negligence or (b) any action taken or omitted in reliance upon any instrument, including any written statement or affidavit provided for in this Escrow Agreement that Escrow Agent shall in good faith believe to be genuine, nor will Escrow Agent be liable or responsible for forgeries, fraud, impersonations, or determining the scope of any representative authority. In addition, Escrow Agent may consult with legal counsel in connection with Escrow Agent's duties under this Escrow Agreement and shall be fully protected in any act taken, suffered, or permitted by it in good faith in accordance with the advice of counsel. Escrow Agent is not responsible for determining and verifying the authority of any person acting or purporting to act on behalf of any party to this Escrow Agreement.

6.  **Fees and Expenses.** It is agreed that the fees and usual charges agreed upon for services of Escrow Agent shall be considered compensation for ordinary services as contemplated by this Escrow Agreement. Unless otherwise provided, Interpublic will pay all Escrow Agent's usual charges and other fees and expenses provided for in this Escrow Agreement.

7.  **Controversies.** If any controversy arises between the parties to this Escrow Agreement, or with any other party, concerning the subject matter of this Escrow Agreement, its terms or conditions, Escrow Agent will not be required to determine the controversy or to take any action regarding it. Escrow Agent may hold all documents and may wait for settlement of any such controversy by final appropriate legal proceedings or other means as, in Escrow Agent's discretion, Escrow Agent may be required despite what may be set forth elsewhere in this Escrow Agreement. In such event, Escrow Agent will not be liable for interest or damage as long as Escrow Agent acts in good faith and without negligence. Furthermore, Escrow Agent may at its option file an action of interpleader requiring the parties to answer and litigate any claims and rights among themselves. Escrow Agent is authorized to deposit with the clerk of the court all documents held in escrow, except all reasonable costs, expenses, charges and reasonable attorney fees incurred by Escrow Agent due to the interpleader action and which the parties, jointly and severally, agree to pay. Upon initiating such action, Escrow Agent shall be fully released and discharged of and from all obligations and liability imposed by the terms of this Escrow Agreement.

8.  **Indemnification of Escrow Agent.** Interpublic and the Stockholders and their respective successors and assigns agree to indemnify and hold Escrow Agent harmless against any and all losses, claims, damages, liabilities, and expenses, including reasonable costs of investigation, reasonable counsel fees, including allocated costs of in-house counsel and disbursements, that may be imposed on Escrow Agent or incurred by Escrow Agent in good faith and without negligence in connection with the performance of its duties under this Escrow Agreement, including, but not limited to, any litigation arising from this Escrow Agreement or involving its subject matter.

9.  **Resignation of Escrow Agent.** Escrow Agent may resign at any time upon giving at least thirty (30) days' written notice to Interpublic and the Stockholders; provided, however, that no such resignation shall become effective until the appointment of a successor escrow agent which shall be accomplished as follows: Interpublic and the Stockholders shall use their best

efforts to mutually agree on a successor escrow agent within thirty (30) days after receiving such notice. If the parties fail to agree on a successor escrow agent within such time, Escrow Agent shall have the right to appoint a successor escrow agent. The successor escrow agent shall execute and deliver an instrument accepting such appointment and it shall, without further acts, be vested with all the estates, properties, rights, powers, and duties of the predecessor escrow agent as if originally named as escrow agent. Upon selection of a successor, Escrow Agent shall be discharged from any further duties and liability under this Agreement.

10.   Notice. Instructions and other documents delivered under this Escrow Agreement shall be valid if (i) hand-delivered, (ii) sent by registered or certified mail, return receipt requested, (iii) sent by Federal Express or other reliable overnight courier service, or (iv) transmitted by telecopy.

If to Interpublic to:

Mr. Eugene P. Beard
Vice Chairman - Finance and Operations
The Interpublic Group of Companies, Inc.
1271 Avenue of the Americas
New York, NY 10020
Telecopy No. (212) 399-8130

With a copy to:

Nicholas J. Camera, Esq.
Vice President and General Counsel
            and
Theodore H. Paraskevas, Esq.
Vice President and Associate General Counsel
The Interpublic Group of Companies, Inc.
1271 Avenue of the Americas
New York, NY 10030
Telecopy No. (212) 399-8280

If to Holdings to:

PFRMF Investment Holdings, LLC
14 Fireside Court
Norwalk, CT 06850
Attn: Peter Fratarcangelo

If to Colucci to:

Salvator V. Colucci
79 Cross County Trail

- 4 -

Stamford, CT 06903

If to Kottler to:

Thomas Kottler
180 Merwins Lane
Fairfield, CT 06430

In the case of any notice to Holdings, Colucci or Kottler, a copy to:

Pryor, Cashman, Sherman & Flynn LLP
410 Park Avenue, 10th Floor
New York, NY 10022
Attn: Eric M. Hellige, Esq.
Telecopy No.: (212) 326-0806

If to the Escrow Agent to:

Wilmington Trust Company
Rodney Square North
1100 N. Market Street
Wilmington, DE 19890-0001
Attn: Ann E. Roberts
Telecopy No.: (302) 427-4749

Each notice, demand, instruction or communication which shall be given or made in the manner described above shall be deemed sufficiently given or made at such time as it is delivered to the addressee in the case of personal delivery or registered or certified mail, one (1) business day following delivery to the courier if sent by Federal Express or other reliable overnight courier or upon receipt of the telecopy if sent by telecopy, followed by a written confirmation within two (2) business days.

11. **Binding Effect.** This Escrow Agreement shall be binding upon, inure to the benefit of, and be enforceable by the parties hereto and their respective successors and assigns.

12. **Governing Law.** This Escrow Agreement shall be deemed a contract made under the laws of the State of New York and together with the rights and obligations of the parties hereunder, shall be construed and enforced in accordance with and governed by the laws of such state (but not including the choice-of-law rules thereof).

13. **Counterparts.** This Escrow Agreement may be executed simultaneously in counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

14. <u>Captions</u>. Any captions are solely for convenience of reference and shall not be used in construing or interpreting this Escrow Agreement.

15. <u>Entire Agreement</u>. This Escrow Agreement contains the entire agreement among the parties with respect to the subject matter hereof and supersede all prior or oral agreements or understanding with respect thereto.

**IN WITNESS WHEREOF**, the parties hereto have executed this Escrow Agreement as of the day and year first above written.

THE INTERPUBLIC GROUP OF COMPANIES, INC.

By: _____
Nicholas J. Camera
Vice President, General Counsel and Secretary


PFRMF INVESTMENT HOLDINGS, LLC

By: _____
Peter A. Fratarcangelo, Jr.
Member


_____
**SALVATORE V. COLUCCI**


_____
**THOMAS KOTTLER**


WILMINGTON TRUST COMPANY

By: _____
Name:
Title:   James D. Nesci
         Authorized Signer